## 72118. WARREN v. THE STATE.
(348 SE2d 88)

DEEN, Presiding Judge.

A Muscogee County jury found appellant Warren guilty of the offense of possession of a controlled substance (hydromorphone) with intent to distribute. He was sentenced to serve thirty years (twenty in confinement and ten on probation). He appeals from this judgment, enumerating as error the court's admission into evidence of allegedly hearsay testimony; of appellant's post-arrest statements; and of a defense witness' conviction of a crime of moral turpitude. *Held*:

1. Our scrutiny of the entire record, including the trial transcript, reveals that in the fact situation of the instant case, the allegedly hearsay testimony given by arresting officers falls well within the parameters of an established exception to the hearsay rule; namely, testimony to explain conduct. The challenged testimony explained why the officers took the actions they did. See *Rhine v. State*, 176 Ga. App. 171 (335 SE2d 422) (1985); *Doughty v. State*, 175 Ga. App. 317 (333 SE2d 402) (1985). See also *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984); *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982). This enumeration is without merit.

2. The record reveals that a *Jackson v. Denno* hearing was held to determine the voluntariness of the challenged statements, and that the trial court determined as a matter of fact that the *Miranda* and related requirements were fully complied with. This court is bound to accept the factual determinations of the court below unless they are plainly erroneous and unsupported by the evidence. *Dick v. State*, 246 Ga. 697, 701 (273 SE2d 124) (1980); *Mobley v. State*, 164 Ga. App. 154 (296 SE2d 617) (1982). This enumeration, too, is devoid of merit.

3. Also without merit is appellant's assignment of error to the court's admitting as impeaching evidence a defense witness' prior conviction of a crime involving moral turpitude. Any witness other than the defendant may be impeached by evidence of such a conviction. *Harris v. State*, 173 Ga. App. 787 (328 SE2d 370) (1985). Black's Law Dictionary (5th ed., 1979), at 1359, defines moral turpitude as "everything done contrary to justice, honesty, modesty, or good morals . . . A term . . . [employed] in statutes . . . providing that a witness' conviction of a crime of moral turpitude may be shown as tending to impeach his credibility." The State tendered evidence of witness Edmonds' conviction of the offense of pimping, OCGA §§ 16-6-11; 16-6-13; moreover, Edmonds admitted in open court to having pled guilty to the pimping charge. See *Evans v. State*, 70 Ga. App. 500 (28 SE2d 671) (1944), and *Norley v. State*, 170 Ga. App. 249, 253 (316 SE2d 808) (1984). We find that the court below properly admitted this evidence.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Sognier, Pope and Benham, JJ., concur. Pope, J., also concurs specially. Birdsong, P. J., Carley and Beasley, JJ., dissent.*

POPE, Judge, concurring specially.

I concur fully in the majority opinion, but I feel that more needs to be said regarding the use of OCGA § 24-3-2 as an exception to the hearsay rule. The Supreme Court announced its new, restrictive reading of OCGA § 24-3-2 in *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982). Although I feel that *Momon* turned more on the question of similar offenses than on hearsay, nonetheless the rule was reiterated strongly in *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984). As I stated in my special concurrence in *Hart v. State*, 174 Ga. App. 134 (329 SE2d 178) (1985): "I do not believe it was the intent of the Supreme Court in *Teague* to simply read OCGA § 24-3-2 out of the law and to virtually ban the admission of testimony to explain conduct; rather, the aim was to circumscribe a trend toward indiscriminate use of this Code section to cover any statement made to a police officer." Id. at 136. In *Hart*, I went on to state that it is imperative that the trial court give limiting instructions regarding the testimony received under OCGA § 24-3-2. Such limiting instructions were given in this case. As in *Ivester v. State*, 252 Ga. 333 (2) (313 SE2d 674) (1984), and *Rhine v. State*, 176 Ga. App. 171 (1) (335 SE2d 422) (1985), the testimony offered here explained to the jury the officer's conduct in effecting the arrest. The circumstances of the arrest are relevant and admissible. *Ivester*, supra at 335. This is not a case of abuse of OCGA § 24-3-2 which the rule in *Teague* so sternly prohibits. It is an example of the proper use and continuing viability of the Code section in criminal proceedings.

BEASLEY, Judge, dissenting.

Although I concur in Divisions 2 and 3, I cannot agree with Division 1 of the majority opinion.

Sharon Dowling was not a witness in the case. There was a significant amount of testimony from a police officer regarding what she told him. Some of it involved what other people had told her. Defendant did not have an opportunity to cross-examine her with respect to any of these extrajudicial statements, all of which were made while she was in police custody following her arrest for theft by receiving stolen property. The narration that follows, then, relating to the state's case, is derived from the officer's testimony and not hers.

After her arrest, the police asked for her assistance in identifying her supplier and arranging a buy from him. She named defendant and, through a series of telephone calls made in the presence of the officer, set up a drug transaction whereby defendant was to bring 30

Dilaudin pills for $40 to her home, for a buyer who defendant did not know was the police officer. At one point in one of the telephone conversations, the officer talked briefly to defendant to confirm the proposed purchase, and the officer identified defendant in court as the person he had talked to on that occasion.

Objections were repeatedly made with respect to the officer's testimony concerning what Sharon Dowling said. He was permitted to testify what she had related to him was said over the phone by a person named by her as being defendant's partner and by a person she said was defendant. In only one of these conversations did the officer speak to the person on the other end of the line.

After the last call, defendant did come to Sharon Dowling's home and was arrested, whereupon a bag of pills was found in a blue handkerchief defendant had tried to slide under a piece of furniture as he was being arrested. That was the controlled substance which defendant was convicted of possessing with intent to distribute.

The defense was that the pills were Sharon Dowling's and defendant was just bringing them back to her as she had requested, she having left them with him earlier. The defendant and his witnesses testified to this effect. Thus it became critical what was said by Sharon Dowling and what was said by the person on the end of the line each time a phone call was made.

I do not perceive that the officer's conduct was in issue, although that was the basis on which the court allowed the evidence. The question was whether defendant went to Sharon Dowling's house to return her pills or to sell pills, which defendant had obtained as a dealer, to the officer. The introduction of this evidence over objection thus violated OCGA § 24-3-2 as it has been construed by the Supreme Court. *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982); *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984).

This was not one of those "rare instances" in which the conduct of the officer had to be explained because it was a "matter concerning which the truth must be found." *Teague*, supra at 536. The fact that the officer was at Sharon Dowling's house when defendant came was not in issue. What was in issue was why defendant had the pills, whether he knew what they were, whether he was bringing them to sell them to a buyer pursuant to an arrangement made by Sharon Dowling over the phone previously, and whether defendant was a supplier. Defendant's conduct, not that of the police, was at issue.

I could not say that the hearsay relating to Sharon Dowling's statements, and particularly what she reportedly said others said, constituted harmless error. Even though the officer verified the crux of the arrangement with defendant over the phone, his identification of defendant as the person to whom he spoke was based at least in part on what Sharon Dowling had told him, and it was she who de-

scribed him as a dealer and supplier. The content of the responses and statements made to Sharon Dowling by the individuals in the phone conversations was important and was disputed.

Moreover, much of this testimony was not limited by the court as to its use.

I would reverse for a new trial.

DECIDED JULY 2, 1986 —
REHEARING DENIED JULY 28, 1986 — 

*James A. Elkins, Jr.*, for appellant.
*William J. Smith, District Attorney, Bradford R. Pierce, J. Gray Conger, Assistant District Attorneys*, for appellee.