## A06A2332. HOPKINS v. THE STATE.

(642 SE2d 356)

MIKELL, Judge.

On August 9, 2005, a jury found Marty Raymond Hopkins guilty of driving under the influence (DUI) to the extent that it was less safe for him to drive, OCGA § 40-6-391 (a) (1), and of violating the open container law, OCGA § 40-6-253. On December 30, 2005, the trial court granted his motion for an out-of-time appeal. Thereafter, Hopkins filed a timely motion for new trial, asserting, inter alia, that his trial counsel rendered ineffective assistance by tendering into evidence the police report, which contained the numeric result of his alco-sensor test. Following a hearing, the trial court denied Hopkins' motion for new trial without explanation. Hopkins challenges this decision on appeal and further argues that the trial court erred by overruling his continuing witness objection to including the police report in the exhibits sent out with the jury. Finding no error warranting reversal, we affirm his convictions.

1. Although not enumerated as error, we address the sufficiency of the evidence, given its bearing upon the prejudice prong of his ineffective assistance claim. Viewed in the light most favorable to the verdict, the evidence shows that on August 6, 2003, at nearly 2:00 a.m., Sergeant Brad Stafford of the Douglasville Police Department responded to a call from a citizen indicating that someone "appeared to be asleep or passed out at the wheel" at a traffic light. When Stafford arrived, he saw several other vehicles waiting behind the vehicle at the light. Stafford approached the driver, later identified as Hopkins, and tried to get him to respond. Hopkins, however, was asleep, and Stafford had to open the door and shake him to get him to

---

[8] See *Carter*, supra; *Van Doran*, supra.

wake up. Stafford testified that he first put the car in park and turned off the motor, because Hopkins was asleep and his foot was on the brake, which was the only thing preventing the car from proceeding into the intersection.

According to Stafford, Hopkins was disoriented when he first woke up, but he stepped outside the car as requested. Stafford looked inside the car and noticed an open, partially consumed can of beer in a cooler on the floorboard, as well as two additional empty beer cans, one on the passenger seat and another in the back. Stafford testified that Hopkins' speech was slurred and that his eyes were bloodshot and watery. Stafford did not recall any odor of alcohol on Hopkins' person. When questioned by Stafford, Hopkins stated that he had been drinking at a nearby bar.

Stafford further testified that he administered an alco-sensor test to Hopkins, and the result was positive for the presence of alcohol.[1] Finally, he asked Hopkins to perform two field sobriety tests. According to Stafford, Hopkins failed the test requiring him to touch his nose with his finger but passed the test requiring him to recite the alphabet. Stafford did not ask Hopkins to perform any tests requiring him to balance because he had leg problems.

Based on his observations of Hopkins, as well as his training and experience, Stafford concluded that Hopkins was under the influence of alcohol to the extent that it was less safe for him to drive. Construing the evidence most favorably to the state, we find it sufficient to support the verdict under the standard of *Jackson v. Virginia*.[2]

2. Hopkins contends that his trial counsel rendered ineffective assistance by tendering into evidence Stafford's incident/arrest report, which contained, among other things, the numeric result of his alco-sensor test, which was 0.130 grams.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional

---

[1] Counsel requested a bench conference prior to this testimony to ensure that Stafford would not testify to the specific result of the alco-sensor test.

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Poole v. State*, 249 Ga. App. 409, 411 (1) (548 SE2d 113) (2001) (defendant found slumped over the wheel, passed out, with motor running, on the wrong side of the road; his speech was slurred and he had trouble standing; evidence sufficient to sustain his conviction of driving under the influence of a toxic vapor).

errors the result of the proceeding would have been differ-
ent. The criminal defendant must overcome the strong pre-
sumption that trial counsel's conduct falls within the broad
range of reasonable professional conduct.[3]

A trial court's determination that a defendant was afforded
effective assistance of counsel will be upheld unless it is clearly
erroneous.[4]

In the case at bar, the record shows that counsel attempted to use
the report to impeach Stafford during cross-examination. Although
Stafford had testified on direct that Hopkins' speech was slurred,
Stafford had checked the code for "normal" rather than "slurred"
speech on the front page of the report. When counsel first sought to
question Stafford on this subject, the state objected, arguing that
counsel could not use the report unless she admitted it into evidence.
The court stated, "[I]t's not into evidence yet. I don't think he can refer
to it. And you need to lay the foundation." Counsel then tendered the
report. The court queried, "You're tendering it?" Counsel replied,
"Yes, Your Honor." Thereafter, Stafford testified that he should have
marked the code for slurred speech. On redirect, Stafford testified
that he had written in the narrative portion of his report that Hopkins
had had slurred speech, bloodshot and watery eyes, and difficulty
focusing on Stafford's questions.

Following the charge conference, counsel asked that the court
"reconsider the earlier ruling requiring [her] to enter the police
officer's report into evidence prior to using it to impeach him." The
court pointed out, "I did not require you to do that. . . . The objection,
I think, may have led you to believe that you had to introduce it into
evidence." The court noted that counsel could have laid the founda-
tion for impeachment by use of a prior inconsistent statement by
alternative methods. Counsel then argued that the report should not
go out with the jury because to do so would violate the continuing
witness rule.[5]

In Georgia the "continuing witness" objection is based on the
notion that written testimony is heard by the jury when read
from the witness stand just as oral testimony is heard when

---

[3] (Punctuation and footnote omitted.) *Gibbs v. State*, 270 Ga. App. 56, 58 (2) (606 SE2d 83)
(2004).

[4] *McCarty v. State*, 269 Ga. App. 299, 301 (1) (603 SE2d 666) (2004).

[5] See *Broadnax-Woodland v. State*, 265 Ga. App. 669-670 (1) (595 SE2d 350) (2004) (trial
court erred in admitting police report into evidence, and allowing it to go out with the jury, over
defendant's continuing witness objection). Accord *Kent v. State*, 245 Ga. App. 531, 533 (3) (538
SE2d 185) (2000) (allowing victim's written statement to go out with the jury violated the
continuing witness rule).

given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.[6]

The court noted that counsel herself had tendered the report and had not introduced it for any limited purpose. The court ruled that since the report "came in the way it did, I am going to leave it in as an exhibit, and it will go out with the jury."

Thereafter, during closing argument, the prosecutor urged the jury to "[r]ead the narrative. Read every word, . . . every single line of this report, because . . . it gives you all the evidence of his impairment, including the results of the alcosensor." Counsel moved for a mistrial, arguing that the alco-sensor results were inadmissible,[7] but the court denied the motion, commenting that the problem was that counsel herself had introduced the narrative containing those results.

(a) Deficient performance. At the hearing on Hopkins' motion for new trial, counsel testified that she intended to show the report to Stafford to refresh his recollection, but she was "flustered and caught off guard" when the court did not overrule the state's objection to her failure to introduce the report into evidence. Believing that the court had ruled that she would be required to introduce the report to use it for impeachment, counsel tendered the document. Counsel testified that she had no strategic reason for not asking the court to clarify its ruling, and that she made a mistake in tendering the document, "especially considering the fact that the blood alcohol level was contained in the narrative portion of the report." As counsel recognized, "there is no requirement in Georgia law that a witness's prior inconsistent statement be admitted into evidence prior to its use for impeachment."[8] And, "it is impermissible to testify to the results of an alco-sensor test giving a numeric reading as to the amount of alcohol in the person's blood."[9] We conclude that tendering the report into evidence, knowing that it contained the otherwise inadmissible numeric result of the alco-sensor test, fell below the standard of reasonable professional conduct.[10] Hopkins thus has satisfied his burden of proving that counsel's performance was deficient.

---

[6] (Citation omitted.) *Tibbs v. Tibbs*, 257 Ga. 370-371 (359 SE2d 674) (1987).

[7] See *Heller v. State*, 234 Ga. App. 630, 632 (3) (507 SE2d 518) (1998) (numeric results of an alco-sensor test are inadmissible).

[8] (Citation omitted.) *Holsey v. State*, 281 Ga. 177, 179 (2) (637 SE2d 32) (2006). See OCGA § 24-9-83.

[9] *Heller*, supra, citing *Turrentine v. State*, 176 Ga. App. 145, 146 (1) (335 SE2d 630) (1985).

[10] See *Kalb v. State*, 276 Ga. App. 394, 396-398 (2) (623 SE2d 230) (2005) (failure to assert proper objection to admission of defendant's history of traffic offenses constituted ineffective

(b) Prejudice. We recognize that, to show that counsel's deficient performance so prejudiced him that the outcome of trial would have been different but for counsel's error, "[Hopkins'] burden is to show only 'a reasonable probability' of a different outcome, not that a different outcome would have been certain or even 'more likely than not.' "[11] Nevertheless, we conclude that Hopkins has not carried this burden because the evidence of his guilt is overwhelming.[12] Stafford found Hopkins passed out behind the wheel of his vehicle in the left turn lane at an intersection controlled by a traffic light, where he was holding up traffic. The officer had to put the vehicle in park to keep it from rolling into the intersection. Hopkins had to be roused from sleep and was disoriented. He admitted that he had been drinking, and he failed a field sobriety test. Despite the emphasis placed on the report by the state during closing argument, we conclude that nothing contained therein reasonably could have affected the outcome of the trial.

3. Hopkins contends that the trial court erred in sending the police report to the jury over his continuing witness objection. Hopkins is correct that allowing the narrative portion of a police report to go out with the jury may violate the continuing witness rule.[13] In the case at bar, however, the error was self-induced as the report was admitted by the defense during cross-examination. As "[s]elf-induced error cannot be complained of on appeal," this enumeration of error provides no basis for reversal.[14]

Hopkins argues that the court had led counsel to believe that a continuing witness objection was not necessary because during the state's case in chief, the trial court had admitted a videotape of the incident and had ruled, sua sponte, that it would not go out with the jury. We are not persuaded that Hopkins was relieved by this ruling from the consequences of his own error in tendering the report himself. Finally, Hopkins argues that he did not waive the continuing witness objection because it may be raised either at the time the document is tendered or before exhibits are sent out with the jury. The cases he cites for this proposition, however, do not appear to involve

---

assistance); *Gibbs*, supra (counsel rendered ineffective assistance by failing to disclose exculpatory documentary evidence after opting in to reciprocal discovery, thus barring the use of the exculpatory evidence at trial).

[11] (Citation omitted.) *Schofield v. Gulley*, 279 Ga. 413, 416 (I) (A) (614 SE2d 740) (2005). Accord *Terry v. Jenkins*, 280 Ga. 341, 347 (2) (c) (627 SE2d 7) (2006).

[12] See *Holsey*, supra at 180 (4); *Razor v. State*, 259 Ga. App. 196, 200-201 (5) (d) (576 SE2d 604) (2003).

[13] See *Broadnax-Woodland*, supra; *Cox v. State*, 263 Ga. App. 266, 268 (2) (b) (587 SE2d 205) (2003).

[14] (Citation and punctuation omitted.) *Phyfer v. State*, 259 Ga. App. 356, 361 (5) (b) (577 SE2d 56) (2003).

documents tendered by the defense.[15] As such, they are distinguishable. Where, as here, the error is self-induced at the outset, we will not consider it on appeal.

4. Finally, Hopkins asserts that the trial court erred in overruling his hearsay objection to Stafford's testimony that a concerned citizen had called 911 to report that a person appeared to be asleep or passed out at the wheel. The trial court admitted the testimony to explain Stafford's conduct in responding to the scene. We recently held, in a case involving substantially similar circumstances, that it was error for the trial court to permit a police officer to testify to the exact words of the 911 caller.[16] In so doing, we recounted the following admonition from our Supreme Court: "unless it is the rare instance in which the conduct of an investigating officer is a matter concerning which the truth must be found, it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation."[17] So, too, in the instant case the trial court erred in overruling Hopkins' objection. The error was harmless, however, because Stafford testified that when he arrived at Hopkins' vehicle, Hopkins was asleep behind the wheel. "The erroneous admission of hearsay is harmless where, as here, legally admissible evidence of the same fact is introduced. In such a case, the hearsay is cumulative and without material effect on the verdict."[18] Because the officer's testimony mirrored that of the 911 caller, the admission of the hearsay evidence was harmless error.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 21, 2007.

*Sexton, Key & Hendrix, Joseph S. Key*, for appellant.
*Gregory R. Barton, Solicitor-General, Evelyn Proctor, Assistant Solicitor-General*, for appellee.

---

[15] *Carr v. State*, 275 Ga. 185, 187 (4) (563 SE2d 850) (2002); *Mason v. State*, 274 Ga. 79, 81 (3) (548 SE2d 298) (2001); *Flournoy v. State*, 266 Ga. 618-619 (2) (469 SE2d 195) (1996).

[16] *Moore v. State*, 281 Ga. App. 141, 143-144 (2) (635 SE2d 408) (2006). See also *Mason*, supra at 81 (4).

[17] (Citations omitted.) *Weems v. State*, 269 Ga. 577, 579 (2) (501 SE2d 806) (1998).

[18] (Citations omitted.) *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999). Accord *Zachery v. State*, 276 Ga. App. 688, 691 (2) (624 SE2d 265) (2005).