A10A1130. MALLORY v. THE STATE.
(703 SE2d 120)

MILLER, Chief Judge.

A jury convicted Quinton A. Mallory of single counts each of robbery (OCGA § 16-8-40 (a) (1)), false imprisonment (OCGA § 16-5-41), and battery (OCGA § 16-5-23.1). He appeals, arguing that the trial court erred (i) in failing to exclude testimony and physical evidence as to two latent fingerprints based on the State's discovery violation; and (ii) in requiring him to specify the missing element of a business record exception to the admission of fingerprint records. Finding that Mallory made no showing of prejudice or bad faith on the part of the State, and otherwise discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007)), the evidence shows that on August 10, 2006, Carolyn Al-Jaber was working at Kings Beauty Supply, Inc. ("Kings") when Mallory entered the store. He walked down the middle aisle, and looked to his right and left. As Mallory was the only customer in the store at the time, Al-Jaber felt uneasy and asked Mallory if he needed assistance. After Mallory examined two conditioners and a gold Chanel purse, intended for his girlfriend, he returned the items to Al-Jaber. As

Al-Jaber put the second conditioner back on the shelf, Mallory suddenly came around the counter and struck Al-Jaber in the head with his fist and knocked her to the ground, stating, "You know what the ____ I want." Mallory struck Al-Jaber again in the head and forearm, forced her to put her hands behind her back, ordered her to the register, and demanded the cash register key. He then forced her to the floor in a corner and told her not to move or touch anything. With his hand over his pocket, Mallory repeatedly stated, "don't make [me] get crazy." Al-Jaber saw a bulge in Mallory's pocket and was fearful he had a gun and would shoot her.

When Al-Jaber told Mallory that the drawer was unlocked, Mallory attempted to open the cash register several times, but was unsuccessful. Fearing for her life, Al-Jaber offered to open the drawer for him, and despite Mallory's orders to stay down on the floor, Al-Jaber got up and opened the cash register. Again ordered to the floor, Al-Jaber complied. Mallory then emptied out the register's contents, and left with approximately $800. Mallory's fingerprints were found on the cash register drawer and a gold Chanel purse.

Following the incident, Al-Jaber could not make a positive identification of Mallory as the robber.

1. Mallory contends that the trial court erred in admitting testimony and evidence about two latent fingerprints because the State failed to timely produce two supplemental reports prior to trial. We disagree.

Absent an abuse of discretion, we will not reverse a trial court's decision to fashion a remedy for violations of the reciprocal discovery statute. *Murray v. State*, 293 Ga. App. 516, 519 (2) (667 SE2d 382) (2008).

Before trial, Mallory elected to proceed under the discovery provisions of OCGA § 17-16-1 et seq. by "opting in" to discovery and serving written notice on the State. OCGA § 17-16-2 (a).

OCGA § 17-16-4 (a) (4) provides:

> The prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant at a time agreed to by the parties or ordered by the court to inspect and copy or photograph a report of any . . . scientific tests or experiments, including a summary of the basis for the expert opinion rendered in the report, or copies thereof, if the state intends to introduce in evidence in its case-in-chief or in rebuttal the results of the . . . scientific test or experiment. . . .

If the State fails to comply with its discovery obligations, the court

may order the State to permit the discovery or inspection, interview of the witness, grant a continuance, or, *upon a showing of prejudice and bad faith*, prohibit the state from introducing the evidence not disclosed . . . or may enter such other order as it deems just under the circumstances.

(Emphasis supplied.) OCGA § 17-16-6. See also *Boykin v. State*, 264 Ga. App. 836, 840 (3) (592 SE2d 426) (2003) (defendant must show that the state acted in bad faith and that he was prejudiced before the trial court will impose the harsh sanction of excluding evidence).

The record shows that, in pre-trial discovery, the State served Mallory with a fingerprint identification notice which identified Mallory's fingerprint from a partial latent print taken from the cash register drawer at Kings. In a more detailed report dated August 22, 2007 ("second report"), Investigator Allen compared latent fingerprints taken from the scene with Mallory's fingerprints, and confirmed a match of Mallory's second finger but could not conclude a match from a rolled print of Mallory's right ring finger.[1] The State provided the second report to Mallory on August 27, 2007, the first day of trial. In a supplemental report dated August 27, 2007, Investigator Allen confirmed a match of Mallory's right ring finger when he enlarged the print on a chart ("third report"). The State provided this report to Mallory on August 28, 2007. Mallory objected to any testimony concerning the second and third reports based on their untimely production.

While trial counsel acknowledged that he had an opportunity to have an expert review the latent prints and Mallory's print cards, the trial court allowed him a further opportunity to speak with Investigator Allen before trial, and counsel indicated that he "briefly spoke with [the investigator] a little bit before in [the prosecutor's] office." Trial counsel further stated that he "would like maybe another ten minutes maybe to talk with him, . . . a little bit of time so that I can at least get a better feel of what he does have." The trial court granted counsel the additional time he requested to talk with the investigator, and following that, counsel did not request a continuance. Finding that the information in the two reports was not new information and was equally available to defense counsel, the trial court ruled that Investigator Allen could testify as to his findings in both reports.

Based on this record, we fail to conclude that the State acted in bad faith by not providing the second and third reports to Mallory

---

[1] In the second report, Investigator Allen indicates that he utilized a "standard minimum point count of twelve points to declare the match a positive identification." The investigator only identified eleven matching points as to Mallory's right ring finger.

prior to trial. The second report concerning Mallory's partial latent print from the cash register drawer was provided to Mallory in discovery from the State. The third report revealed newly discovered evidence which the State did not discover until Investigator Allen enlarged Mallory's fingerprint on charts in his preparation for trial. As soon as the State received the third report from its investigator, it provided the same to Mallory. OCGA § 17-16-4 (c) ("if . . . during trial a party discovers additional evidence or material previously requested or ordered which is subject to discovery or inspection under this article, such party shall promptly notify the other party of the existence of the additional evidence or material and make [same] available as provided in this article"); *Herieia v. State*, 297 Ga. App. 872, 873 (1) (678 SE2d 548) (2009) (state complied with newly discovered evidence statute where state did not learn that defendant held knife to victim until its final interview with victim and disclosed such fact to defense counsel four days later). Further, there is no evidence that the State knowingly withheld this evidence from Mallory.

Given the foregoing, Mallory's claim of bad faith fails. See *Herieia*, supra, 297 Ga. App. at 873-874 (1) (trial court's exclusion of evidence was upheld where defendant failed to identify any act of bad faith on part of the state or show that state knowingly withheld evidence); *Boykin*, supra, 264 Ga. App. at 840 (3) (defendant did not present any evidence showing that the state acted in bad faith in failing to provide his attorney with letters earlier). To the extent Mallory argues that trial counsel was unaware of the existence of the two latent prints, this contention is not supported by the record, as Mallory failed to call trial counsel as a witness during the motion for new trial hearing.

Even were it otherwise, Mallory has not shown prejudice. Although Mallory's counsel could have obtained an independent evaluation of the latent prints, which were equally available to him, he chose not to do so. Prior to trial, Mallory's counsel acknowledged that previous counsel had secured funds to obtain an independent fingerprint expert after Mallory filed a pro se motion for a scientific evaluation of his fingerprints. When the trial court inquired whether he would proceed with the pro se motion, counsel stated that he did not think "[the independent evaluation] was necessary" and would just "rely on cross-examination of the method used by the expert [the State] ha[s]." As such, Mallory's argument that he was prejudiced by the State's late production of the second and third reports because he did not have an opportunity to investigate its findings, discuss same with the investigator, or obtain its own expert for trial is unavailing.

Moreover, Mallory cannot show prejudice as he did not request a

continuance, which he concedes. *Murray*, supra, 293 Ga. App. at 520 (2) ("a defendant is obliged to request a continuance to cure any prejudice which may have resulted from the state's failure to comply with the requirements of the reciprocal discovery act") (punctuation and footnote omitted). Thus, the trial court did not err in admitting testimony and evidence relating to the second and third reports. Id. at 519 (2).

2. Mallory contends that the trial court erred in requiring his counsel to explain the missing steps of a business record exception after he objected to the State's introduction in evidence of his fingerprint cards. We find no reversible error.

After the State sought to introduce two of Mallory's fingerprint cards in evidence as business records, Mallory's counsel objected on the grounds that an "adequate foundation is missing." The trial court asked him to specify the missing item and counsel responded that the State did not establish the steps required for a business record exception. When asked to identify the missing element, counsel stated, "if I tell her, then she fixes it[,]" indicating he "[did not] know if [he] had to state the specific step of the business record exception." After the trial court instructed him to do so, trial counsel stated that the State did not specify that the exhibits "were created at or near the time they are alleged to have been created." See OCGA § 24-3-14 (b). We cannot say that the trial court abused its discretion in requiring Mallory's counsel to specify the missing element. See *Cantu v. State*, 304 Ga. App. 655 (1) (697 SE2d 310) (2010) (evidentiary ruling reviewed for a clear abuse of discretion).

Even assuming the trial court erred in this regard, the fingerprint cards were not the sole evidence linking Mallory to the crimes. Investigator Allen testified that he made a visual comparison of Mallory's fingerprints and concluded that two latent prints taken from the scene belonged to Mallory. He also testified that the results of a computer analysis identified a known print of Mallory's as the closest of ten matches to the latent print. Accordingly, any error was harmless.

*Judgment affirmed. Phipps, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 1, 2010.

*Lance D. Dutton*, for appellant.
*T. Joseph Campbell, District Attorney, Suzanne Z. Brookshire, Assistant District Attorney*, for appellee.